**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL<br>CASUALTY INSURANCE COMPANY<br>2 North Second Street<br>Harrisburg, PA  17105, | Civil Action No. 07-1331 (RBK-JS) |
| Plaintiff, | |
| vs. | |
| PARKSHORE DEVELOPMENT<br>CORPORATION<br>66 Central Square<br>Linwood, NJ  08221 | |
| and | |
| CATALINA COVE CONDOMINIUM<br>ASSOCIATION, INC.<br>15 Catalina Drive<br>Linwood, NJ  08221 | |
| and | |
| KEEN'S CAULKING AND<br>WATERPROOFING<br>2313 Sheridan Avenue<br>Franklinville, NJ  08322 | |
| and | |
| ABC CORPORATION I through ABC<br>CORPORATION X, fictitious names, | |
| Defendants. | |

**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Pennsylvania National Mutual Casualty Insurance Company, avers as follows:

## THE PARTIES

1.      Pennsylvania National Mutual Casualty Insurance Company (hereinafter "PNI") is an insurance company organized under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 2 North Second Street, Harrisburg, Pennsylvania 17105.

2.      Parkshore Development Corporation (hereinafter "Parkshore") is a corporation organized under the laws of the State of New Jersey with its principal place of business located at 66 Central Square, Linwood, New Jersey 08221.

3.      Catalina Cove Condominium Association, Inc. (hereinafter "Catalina Cove") is a corporation organized under the laws of the State of New Jersey with its principal place of business located at 15 Catalina Drive, Linwood, New Jersey 08221 and is named as a party whose interest may be affected by the judgment sought herein.

4.      Keen's Caulking and Waterproofing (hereinafter "Keen's") is a corporation organized under the laws of the State of New Jersey with its principal place of business located at 2313 Sheridan Avenue, Franklinville, New Jersey 08322 and is named as a party whose interest may be affected by the judgment sought herein.

5.      ABC Corporation I through ABC Corporation X, fictitious names, are, upon information and belief, corporations organized under the laws of the State of New Jersey with their principal places of business located in New Jersey and are named as parties whose interests may be affected by the judgment sought herein.

**JURISDICTION AND VENUE**

6. Jurisdiction is appropriate pursuant to 28 U.S.C. §1332 by virtue of the diversity of citizenship of the parties and because the amount in controversy, exclusive of interest and costs, is in excess of $75,000.

7. 28 U.S.C. §2201 authorizes this Court to enter an order declaring the rights and obligations of the parties with respect to the insurance policy that is the subject of this action.

8. Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(1) and §1391(a)(2).

**FACTS**

9. In or about October 2006, Plaintiff Catalina Cove Condominium Association, Inc. filed a Complaint against defendants Parkshore Development Corp., Keen's Caulking and Waterproofing and various John Doe defendants in the Superior Court of New Jersey, Atlantic County – Law Division, docket number ATL-L-5364-06. The Complaint in the *Catalina Cove* lawsuit (hereinafter "the Underlying Action") is attached as Exhibit "A."

10. In the Complaint, Catalina Cove alleged that it is responsible for the management, administration, utilization and maintenance of the common elements of the Catalina Cove Development in Linwood, New Jersey. See, Exhibit "A" at "Identification of Parties," ¶ 3. Plaintiff alleges that Parkshore Development Corp. is the entity that developed the Condominium and, in the course of the development, designed, constructed, marketed and sold the condominium and common elements that comprise the Catalina Cove property. See, Exhibit "A" at "Identification of Parties," ¶ 4.

Plaintiff alleges that the various John Doe defendants participated in the design, construction, marketing and sale of the condominium units and common elements of Catalina Cove.  See, Exhibit "A" at "Identification of Parties," ¶¶ 4-6.  Plaintiff further alleges that Keen's Caulking and Waterproofing, in conjunction with the other defendants, undertook the responsibility of remediating certain defective conditions existing at Catalina Cove and, in conjunction with the other defendants, took certain actions in an attempt to remediate certain defective conditions at the condominium.  See, Exhibit "A" at "Identification of Parties," ¶ 8.

11. In Count I, titled "Breach of Contract and Negligence Claims," the plaintiff alleges that the developer defendants (Parkshore and the John Doe defendants) assumed a contractual and common law duty to design, construct and convey to the public residential dwellings that conformed to existing standards applicable to the construction industry, conformed to the construction plans that were made for the project, were free from defects in design and in construction, conformed to the construction plans that were made for the project, and were free from defects in design and in construction.  See, Exhibit "A" at Count One, ¶ 3.

12. According to the Complaint, the developer defendants made representations as to the quality of the condominium units and made written and oral representations to prospective purchasers in order to induce them into purchasing the condominium units.  Plaintiff alleges that the developer defendants expressly and impliedly warranted that the condominium units, as constructed, would be in accordance with certain architectural plans and in accordance with all applicable building codes and existing standards in the industry.  Plaintiff alleges that these defendants breached their

contractual obligations to the purchasers of the units by failing to design and construct, in an acceptable manner, the various buildings that comprised the condominium development.  See, Exhibit "A" at Count One, ¶¶ 4-6.

13.	According to the Complaint, in designing and constructing the buildings, the developer defendants failed to exercise that degree of care and skill that may reasonably be expected by those entities that operate in the construction industry. Plaintiff alleges that their actions were negligent and constituted a breach of the contractual and common law duties imposed upon them.  Further, the plaintiff alleges that the developer defendants were negligent in the design and construction of the condominium buildings, and that those defendants designed, constructed and ultimately sold to the public condominium units that were defective and not constructed in accordance with the applicable standards.  As a result of the alleged breach of contractual duties by the developer defendants, plaintiff sustained damages.  See, Exhibit "A" at Count One, ¶¶ 7-12.

14.	In Count II, titled "Breach of Implied Warranties," plaintiff alleges that the developer defendants breached certain implied warranties of merchantability and fitness for use for a particular purpose. See, Exhibit "A" at Count Two, ¶¶ 2-3.

15.	In Count III, titled "Consumer Fraud," plaintiff alleges that the developer defendants, in order to induce the members to purchase the condominiums units, made written and oral representations as to the quality of the condominium units and the common elements.  Further, the plaintiff alleges that these defendants failed to provide units and common elements that conformed to the representations and failed to construct the units and common elements in accordance with applicable standards,

codes, and regulations. Plaintiff alleges that the failure to do so constitutes a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* As a result, the plaintiff seeks damages including, treble damages and attorneys' fees. See, Exhibit "A" at Count Three, ¶¶ 2-4.

16. In Count IV, titled "Failure of Remediation," plaintiff alleges that in Fall 1999, the Board of Directors of the Condominium Association advised the developer defendants of construction deficiencies with respect to structural integrity of the exterior walls of the condominium buildings at Catalina Cove. The construction deficiencies in the exterior walls allegedly resulted in excessive water penetration through and into the internal components of the exterior walls, thus causing damage to those portions of the exterior walls. See, Exhibit "A" at Count Four, ¶ 2.

17. According to the plaintiff, the developer defendants and Keen's Caulking and Waterproofing assumed the responsibility to investigate and remediate the cause of the water penetration and repair the damage caused by such water penetration. In undertaking the remediation, the defendants allegedly assumed the duty to investigate the cause of the infiltration and otherwise diagnose the reason for the infiltration. Plaintiff alleges that they also assumed the duties to take such measures as were necessary in order to prevent future infiltration and repair damage caused by the previous infiltration. See, Exhibit "A" at Count Four, ¶¶ 3-4.

18. According to the Complaint, the defendants' duties included the replacement of all portions of the exterior wall that had been damaged, including foam trim, plywood sheathing, exterior stucco, and all other portions of the wall that required repair. Plaintiff alleged that all of the defendants were negligent in failing to property

diagnosis the cause of the infiltration and failing to remedy the cause. The defendants allegedly were further negligent failing to rectify the structural damage caused by previous infiltration and failing to insure that remediation would prevent future infiltration. As a result of this negligence, the plaintiff allegedly sustained substantial damage to the common elements of the Catalina Cove development. <u>See</u>, Exhibit "A" at Count Four, ¶¶ 5-7.

19. Penn National issued a commercial general liability insurance policy to Parkshore, policy number CL9 0014082, with a policy period, upon information and belief, of March 7, 1989 to March 7, 1990, renewed annually through March 7, 2007 (hereinafter "the Policy").

20. Parkshore tendered the defense and indemnification of the Underlying Action to PNI on or about October 17, 2006.

21. By letter dated November 27, 2006, PNI disclaimed coverage for the Underlying Action.

22. An actual dispute exists between PNI and Parkshore as to whether Parkshore is entitled to coverage for the Underlying Action under the Policy.

### COUNT I – DECLARATORY JUDGMENT

23. Penn National incorporates the preceding paragraphs of this Complaint as if set forth at length herein.

24. In the Coverage A Insuring Agreement, the Policy provides indemnity coverage for damage which the insured is legally obligated to pay because of "property damage" and defense of lawsuits seeking those damages if: (1) "property damage" is

caused by an occurrence" that takes place in the "coverage territory;" and (2) the "property damage" occurs during the policy period.

    25.    "Property damage" is defined in the Policy as:

        a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

        b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.

    26.    "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

    27.    The Policy issued to Parkshore beginning in 2002-03 requires as part of the Insuring Agreement that prior to the policy period, no insured or authorized "employee" knew that "property damage" had occurred, in whole or in part; if such an insured knew, prior to the policy period, that the "property damage" occurred, then any continuation, change or resumption of such "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    28.    Exclusion (l) of the Policy precludes coverage for "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on behalf of the named insured by a subcontractor.

    29.    "Your work" is defined as "work or operations performed by you [the named insured] or on your behalf" and includes warranties or representations made at

any time with respect to the fitness, quality, durability, performance or use of "your work."

30.     The "products-completed operations hazard" includes, in pertinent part, all "property damage" occurring way from premises you own or rent and arising out of "your work" except work that has not yet been completed or abandoned.

31.     The 2005-06 and 2006-07 editions of the Policy contain a "Fungi or Bacteria Exclusion" (CG 21 67 04 02), which provides that this insurance does not apply, in pertinent part, to:

> "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such . . . damage.

32.     "Fungi" is defined as "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi."

33.     Because covered damages under the Policy do not include treble damages and attorneys' fees awarded in the Underlying Action pursuant to the New Jersey Consumer Fraud Act, any such award is not covered under the Policy.

34.     Because the allegations in the Underlying Action of faulty workmanship by or on behalf of Parkshore do not constitute an "occurrence" within the meaning of the Policy, Catalina Cove's claims against Parkshore in Counts One, Two and Four do not satisfy the Coverage A Insuring Agreement and are not covered under the Policy.

35.     Because the alleged representations and/or omissions underlying Catalina Cove's Consumer Fraud Act claim against Parkshore did not cause "property damage,"

Catalina Cove's claims against Parkshore in Count Three do not satisfy the Coverage A Insuring Agreement and are not covered under the Policy.

36. To the extent that any "property damage" did not occur during the policy period, such damage is not covered under the Policy.

37. To the extent that "property damage" was known by Parkshore to have occurred, in whole or in part, prior to the inception of the 2002-03 policy period, such damage is not covered under the Policy issued in 2002-03 or thereafter.

38. To the extent that "property damage" to work performed by, or on behalf of, Parkshore and included in the "products-completed operations hazard" was not performed on Parkshore's behalf by a subcontractor, such damage is not covered under the Policy.

39. Because certain "property damage" allegedly occurred due to the presence of "fungi," such damage is not covered under the Policy issued in 2005-06 or thereafter.

WHEREFORE, Pennsylvania National Mutual Casualty Insurance Company respectfully requests that the Court declare the rights and obligations of the parties under policy number CL9 0014082 and enter an order declaring:

(1) Enter a judgment declaring the rights and obligations of each of the parties with respect to this dispute;
(2) Enter a judgment declaring that PNI has no duty to defend or indemnify Parkshore in connection with the Underlying Action;
(3) Award PNI the costs of this action;
(4) Award PNI any other relief this Court deems just and appropriate.

                                        Respectfully submitted,

                                        WEBER GALLAGHER SIMPSON
                                        STAPLETON FIRES & NEWBY LLP

Dated: March 30, 2007         BY: <u>s/ Michael S. Savett</u>
                                            Michael S. Savett, Esquire (MSS6520)
                                            WEBER GALLAGHER SIMPSON
                                            STAPLETON FIRES & NEWBY LLP
                                            1101 N. Kings Highway, Suite 405
                                            Cherry Hill, NJ  08034
                                            (856) 667-9111
                                            (856) 667-9485 FAX