**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

PENNSYLVANIA NATIONAL MUTUAL
CASUALTY INSURANCE COMPANY

      Plaintiff,

      vs.

PARKSHORE DEVELOPMENT
CORPORATION

and

CATALINA COVE CONDOMINIUM
ASSOCIATION, INC.

and

KEEN'S CAULKING AND
WATERPROOFING

and

ABC CORPORATION I through ABC
CORPORATION X, fictitious names,

      Defendants.

Civil Action No. 07-1331 (RBK-JS)

Document Electronically Filed

RETURN DATE: March 3, 2008

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

*On The Brief:*

*Michael S. Savett, Esquire*
WEBER GALLAGHER SIMPSON
STAPLETON FIRES & NEWBY LLP
1101 N. Kings Highway, Suite 405
Cherry Hill, NJ  08034
(856) 667-9111
(856) 667-9485 FAX
Attorney for Plaintiff, Pennsylvania National
Mutual Casualty Insurance Company

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION ....................................................................................... 1

STATEMENT OF MATERIAL FACTS PURSUANT TO L.CIV.R.56.1 ......... 1

LEGAL ARGUMENT................................................................................... 6

    1.    Standard of Review............................................................ 6
    2.    The Duty to Defend and Interpretation of Insurance
        Policy Provisions ................................................................ 7
    3.    Coverage Under the PNI Policy is Not Triggered Because
        There is No "Occurrence"................................................... 8
    4.    The Alleged Violation of the CFA Did Not Result in
        "Property Damage" ........................................................... 18

CONCLUSION......................................................................................... 19

i

## TABLE OF AUTHORITIES

Page

ACS Constr. Co., Inc. of Mississippi v. GCU,
332 F.3d 885 (5th Cir. 2003).............................................................. 13

Amerisure, Inc. v. Wurster Const. Co., Inc.,
818 N.E.2d 998 (Ind. App. 2004)........................................................ 14

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .............................................................................. 6

Baker Residential Ltd. Partnership v. Travelers Ins. Co.,
10 A.D.3d 586 (N.Y. App. 1st Dep. 2004)........ .................................. 14

Bell v. Merchants & Businessmen's Mut. Ins. Co.,
241 N.J. Super. 557 (App. Div.), cert. denied, 22 N.J. 395 (1990) .............. 7

Brosnahan Builders, Inc. v. Harleysville Mut. Ins. Co.,
137 F. Supp. 2d 517 (D. Del. 2001)................................................. 14

Burlington Ins. Co. v. Oceanic Design & Constr., Inc.,
383 F.3d 940 (9th Cir. 2004)..................................................... 12, 13

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .............................................................................. 6

Corder v. William W. Smith Excavating Co.,
556 S.E.2d 77 (W. Va. 2001)............................................................. 12

Custom Planning & Dev. v. American Nat'l Fire Ins. Co.,
606 S.E.2d 39 (Ga. App. 2004) ........................................................ 14

Danek v. Hommer, 28 N.J. Super. 68
(App. Div. 1953), aff'd, 15 N.J. 573 (1954) ........................................ 7

Firemen's Fund Ins. Co. of Newark v. National Union Fire Ins. Co.,
387 N.J. Super. 434 (App. Div. 2006) ................................................. 9

Freestone v. New England Log Homes, Inc.,
2003 Pa. Super. 24 (2003) ............................................................... 17

Gennari v. Weichert Co. Realtors,
148 N.J. 582 (1997).......................................................................... 18

ii

Hartford Acc. & Indem. Co. v. Aetna Life & Cas., Inc.,
98 N.J. 18 (1984) .................................................................................................. 7

Kampf v. Franklin Life Insurance Company,
33 N.J. 36 (1960) .................................................................................................. 7

Kvaerner Metals v. Commercial Union Ins. Co.,
908 A.2d 888 (Pa. 2006) ...................................................................................... 11

L-J, Inc. v. Bituminous Fire & Marine Ins. Co.,
366 S.C. 117 (2005) ............................................................................................ 10

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986) .............................................................................................. 6

Millers Capital Ins. Co. v. Gambone Bros. Development Co.,
___ A.2d ___, 2007 WL 4555258 (Pa. Super. Dec. 28, 2007) ..................... 14, 15

Nabholz Constr. Corp. v. St. Paul Fire & Marine Ins. Co.,
354 F. Supp. 2d 917 (E.D. Ark. 2005) ................................................................ 14

Oak Crest Constr. Co. v. Austin Mut. Ins. Co.,
998 P.2d 1254 (Ore. 2000) .................................................................................. 11

Saliva v. American Policyholders Ins. Co.,
157 N.J. Super 476 (App. Div. 1978) ..................................................................... 7

U.S. Fidelity & Guar. Co. v. Warwick Dev. Co., Inc.,
446 So. 2d 1021 (Ala. 1984) ........................................................................... 11, 12

Voorhees v. Preferred Mutual Ins. Co.,
128 N.J. 165 (1992) ............................................................................................... 7

Walker Rogge, Inc. v. Chelsea Title & Guaranty Company,
116 N.J. 517 (1989) ............................................................................................... 7

Webster County Solid Waste Auth. v. Brackenrich & Assocs., Inc.,
617 S.E.2d 851 (W.Va. 2005) .............................................................................. 12

Weedo v. Stone-E-Brick, Inc.,
81 N.J. 233 (1979) ................................................................................................. 9

**Rules:**

Fed. R. Civ. P. 56(c) ............................................................................................. 6

Fed. R. Civ. P. 56(e). ............................................................................................. 6

**Treatises:**

Couch on Insurance, §129:4 (3d ed. 1998) ...................... ......................... 10

**INTRODUCTION**

This is an insurance coverage declaratory judgment action.  Penn National Insurance ("PNI") seeks a declaration that its commercial general liability (CGL) insurance policy does not provide a defense or indemnity to Parkshore Development Corporation ("Parkshore") for claims asserted against it by Catalina Cove Condominium Association, Inc. ("Catalina Cove") in a lawsuit venued in state court in Atlantic County, New Jersey.  As set forth *infra*, because the requirements for defense and indemnity coverage under the Penn National Insurance policies have not been met, this Court must declare that the insurer has no obligation to defend or indemnity Parkshore for the underlying action.

**STATEMENT OF MATERIAL FACTS PURSUANT TO L. CIV. R. 56.1**

1.    In or about October 2006, Plaintiff Catalina Cove Condominium Association, Inc. filed a Complaint against defendants Parkshore Development Corp., Keen's Caulking and Waterproofing and various John Doe defendants in the Superior Court of New Jersey, Atlantic County – Law Division, docket number ATL-L-5364-06. The Complaint in the *Catalina Cove* lawsuit (hereinafter "the Underlying Action") is attached as Exhibit "A."

2.    In the Complaint, Catalina Cove alleged that it is responsible for the management, administration, utilization and maintenance of the common elements of the Catalina Cove Development in Linwood, New Jersey.   See, Exhibit "A" at "Identification of Parties," ¶ 3.  Plaintiff alleges that Parkshore Development Corp. is the entity that developed the Condominium and, in the course of the development, designed, constructed, marketed and sold the condominium and common elements that

1

comprise the Catalina Cove property. <u>See</u>, Exhibit "A" at "Identification of Parties," ¶ 4. Plaintiff alleges that the various John Doe defendants participated in the design, construction, marketing and sale of the condominium units and common elements of Catalina Cove. <u>See</u>, Exhibit "A" at "Identification of Parties," ¶¶ 4-6. Plaintiff further alleges that Keen's Caulking and Waterproofing, in conjunction with the other defendants, undertook the responsibility of remediating certain defective conditions existing at Catalina Cove and, in conjunction with the other defendants, took certain actions in an attempt to remediate certain defective conditions at the condominium. <u>See</u>, Exhibit "A" at "Identification of Parties," ¶ 8.

3.      In Count I, titled "Breach of Contract and Negligence Claims," the plaintiff alleged that the developer defendants (Parkshore and the John Doe defendants) assumed a contractual and common law duty to design, construct and convey to the public residential dwellings that conformed to existing standards applicable to the construction industry, conformed to the construction plans that were made for the project, were free from defects in design and in construction, conformed to the construction plans that were made for the project, and were free from defects in design and in construction. <u>See</u>, Exhibit "A" at Count One, ¶ 3.

4.      According to the Complaint, the developer defendants made representations as to the quality of the condominium units and made written and oral representations to prospective purchasers in order to induce them into purchasing the condominium units. Catalina Cove alleged that the developer defendants expressly and impliedly warranted that the condominium units, as constructed, would be in accordance with certain architectural plans and in accordance with all applicable building codes and

2

existing standards in the industry.  It also alleged that these defendants breached their contractual obligations to the purchasers of the units by failing to design and construct, in an acceptable manner, the various buildings that comprised the condominium development.  See, Exhibit "A" at Count One, ¶¶ 4-6.

5.      According to the Complaint, in designing and constructing the buildings, the developer defendants failed to exercise that degree of care and skill that may reasonably be expected by those entities that operate in the construction industry. Catalina Cove alleged that their actions were negligent and constituted a breach of the contractual and common-law duties imposed upon them.  Further, the plaintiff alleged that the developer defendants were negligent in the design and construction of the condominium buildings, and that those defendants designed, constructed and ultimately sold to the public condominium units that were defective and not constructed in accordance with the applicable standards.  As a result of the alleged breach of contractual duties by the developer defendants, plaintiff sustained damages.  See, Exhibit "A" at Count One, ¶¶ 7-12.

6.      In Count II, titled "Breach of Implied Warranties," the plaintiff alleged that the developer defendants breached certain implied warranties of merchantability and fitness for use for a particular purpose.  See, Exhibit "A" at Count Two, ¶¶ 2-3.

7.      In Count III, titled "Consumer Fraud," Catalina Cove alleged that the developer defendants, in order to induce the members to purchase the condominiums units, made written and oral representations as to the quality of the condominium units and the common elements.  Further, the plaintiff alleged that these defendants failed to provide units and common elements that conformed to the representations and failed to

construct the units and common elements in accordance with applicable standards, codes, and regulations. The plaintiff alleged that the failure to do so constitutes a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* As a result, the plaintiff seeks damages including, treble damages and attorneys' fees. See, Exhibit "A" at Count Three, ¶¶ 2-4.

8.       In Count IV, titled "Failure of Remediation," the plaintiff alleged in the Complaint that in Fall 1999, the Board of Directors of the Condominium Association advised the developer defendants of construction deficiencies with respect to structural integrity of the exterior walls of the condominium buildings at Catalina Cove. The construction deficiencies in the exterior walls allegedly resulted in excessive water penetration through and into the internal components of the exterior walls, thus causing damage to those portions of the exterior walls. See, Exhibit "A" at Count Four, ¶ 2.

9.       According to the plaintiff, the developer defendants and Keen's Caulking and Waterproofing assumed the responsibility to investigate and remediate the cause of the water penetration and repair the damage caused by such water penetration. In undertaking the remediation, the defendants allegedly assumed the duty to investigate the cause of the infiltration and otherwise diagnose the reason for the infiltration. Catalina Cove alleged that they also assumed the duties to take such measures as were necessary in order to prevent future infiltration and repair damage caused by the previous infiltration. See, Exhibit "A" at Count Four, ¶¶ 3-4.

10.       According to the Complaint, the defendants' duties included the replacement of all portions of the exterior wall that had been damaged, including foam trim, plywood sheathing, exterior stucco, and all other portions of the wall that required

4

repair. Plaintiff alleged that all of the defendants were negligent in failing to property diagnose the cause of the infiltration and failing to remedy the cause. The defendants allegedly were further negligent failing to rectify the structural damage caused by previous infiltration and failing to insure that remediation would prevent future infiltration. As a result of this negligence, the plaintiff allegedly sustained substantial damage to the common elements of the Catalina Cove development. See, Exhibit "A" at Count Four, ¶¶ 5-7.

11. Penn National issued a Commercial General Liability Insurance (CGL) policy, policy number CL9 0014082, to the named insured, "Parkshore Development Corp. and Key Construction Co.," 66 Central Square, Linwood, New Jersey, 08221. The form of business is "corporation." Penn National issued coverage to the named insured as from March 7, 1989 through March 7, 2007. The relevant portions of the policy are attached as Exhibit "B."

12. Parkshore tendered the defense and indemnification of the Underlying Action to PNI on or about October 17, 2006. See, Exhibit "C."

13. Penn National issued a reservation of rights letter to the named insured, Parkshore Development Co., by letter dated October 31, 2006, see, Exhibit "D," and, by letter dated November 27, 2006, disclaimed coverage to the insured. See, Exhibit "E."

14. Penn National Insurance subsequently filed this action seeking a declaration that Catalina Cove's claims are not covered under the policy it issued to Parkshore and that, therefore, Penn National Insurance has neither a duty to defend nor a duty to indemnify Parkshore in Catalina Cove's action.

5

15.     Catalina Cove retained an expert witness, Michael W. Hyland, to opine on Parkshore's alleged fault.  He issued a report on his findings dated August 17, 2007. The August 17, 2007 report is attached as Exhibit "F."

## LEGAL ARGUMENT

### 1. Standard of Review

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Celotex, 477 U.S. at 330.  The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.  Id. at 331.  Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## 2. The Duty to Defend and Interpretation of Insurance Policy Provisions

In New Jersey,[1] an insurer's duty to defend comes into being when the complaint states a claim constituting a risk insured against. Danek v. Hommer, 28 N.J. Super. 68, 77 (App. Div. 1953), aff'd, 15 N.J. 573 (1954). "Stated another way, the duty to defend extends only to claims on which there would be a duty to indemnify in the event of a judgment adverse to the insured." Hartford Acc. & Indem. Co. v. Aetna Life & Cas., Inc., 98 N.J. 18, 22 (1984). The Insuring Agreement's duty-to-defend clause cannot be not triggered absent a potentially coverable occurrence. Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 180 (1992). Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the insurance policy. Voorhees, 128 N.J. at 173.

Under New Jersey law, insurance policies should be construed under normal contract interpretation rules. If an ambiguity exists, but it can be resolved by general rules of construction, the courts need not interpret against the insurer. Saliva v. American Policyholders Ins. Co., 157 N.J. Super. 476 (App. Div. 1978). Although courts should construe truly ambiguous portions of insurance policies in favor of the insured, they should not write a better policy than the one that was purchased. Walker Rogge, Inc. v. Chelsea Title & Guaranty Company, 116 N.J. 517, 529 (1989). It is not the function of the court to make a better contract for either of the parties; rather, the court's function is to enforce what exists when the terms are clear. Kampf v. Franklin Life Insurance Company, 33 N.J. 36, 43 (1960).

---

[1]    New Jersey law applies to govern this coverage dispute. See, Bell v. Merchants & Businessmen's Mut. Ins. Co., 241 N.J. Super. 557, 561-62 (App. Div.), cert. denied, 22 N.J. 395 (1990)

### 3. Coverage Under the PNI Policy is Not Triggered Because There is No "Occurrence"

Coverage A of the CGL coverage form[2] provides that PNI will pay those sums

that the insured becomes legally obligated to pay as damages because of "bodily injury"

or "property damage" to which the policy applies. The policy provides coverage for:

> (1) "bodily injury"[3] or "property damage" caused by an "occurrence"
> that takes place in the "coverage territory;" and (2) "bodily injury" or
> "property damage" [that] occurs during the policy period.

"Property damage" is defined, in pertinent part, as:

> a.   Physical injury to tangible property, including all resulting
> loss of use of that property. All such loss of use shall be
> deemed to occur at the time of the physical injury that
> caused it; or

> b.   Loss of use of tangible property that is not physically injured.
> All such loss of use shall be deemed to occur at the time of
> "occurrence" that caused it.

See, Exhibit "B" at CG 00 01.

Beginning in the 2002-03 policy year, the PNI Policy issued to Parkshore

requires as part of the Insuring Agreement that prior to the policy period, no insured or

authorized "employee" knew that "property damage" had occurred, in whole or in part; if

such an insured knew, prior to the policy period, that the "property damage" occurred,

then any continuation, change or resumption of such "property damage" during or after

the policy period will be deemed to have been known prior to the policy period. See,

Exhibit "B" at CG 00 01 10 01.

---

[2]   Neither the Complaint nor any extrinsic evidence makes clear which policy years potentially apply
to this lawsuit. Unless otherwise specified, reference to the CGL coverage form is to similar terms of the
1988, 1993, 1996, 1998 and 2001 editions of ISO Form CG 00 01 as well as the 1985 edition of Form
CGL-1  See, Exhibit "B."
[3]   There are no allegations of "bodily injury" in the underlying complaint

"Occurrence" is defined in the PNI Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." See, Exhibit "B" at CG 00 01.[4]

New Jersey courts have recognized the majority rule that faulty workmanship by an insured (which is alleged in the underlying action herein) does not constitute an "occurrence." See, e.g., Firemen's Fund Ins. Co. of Newark v. National Union Fire Ins. Co., 387 N.J. Super. 434, 448 (App. Div. 2006). The rationale for this position was explained by the New Jersey Supreme Court in the seminal case of Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 239 (1979):

> The insured-contractor can take pains to control the quality of the goods and services supplied. At the same time he undertakes the risk that he may fail in this endeavor and thereby incur contractual liability whether express or implied. The consequence of not performing well is part of every business venture; the replacement or repair of faulty goods and works is a business expense, to be borne by the insured-contractor in order to satisfy customers.

The other kind of risk which *is* intended to be covered is "the risk of injury to people and damage to property caused by faulty workmanship." Id. In other words, the key distinction is the predictability of the harm: damage for breach of contractual warranty is limited and is an expected cost of doing business; liability for injury or damage to a person or property is potentially "almost limitless" and is "entirely unpredictable." Id. The policy is intended to insure against the latter risk. As concisely stated, "the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident." Id. at 249.

---

[4]     "Occurrence" is defined in the Form CGL-1 (11/85) as "an accident, including continuous or repeated exposure to conditions, which results in 'bodily injury' or 'property damage' neither expected nor intended from the standpoint of the 'insured.'" See, Exhibit "B" at Form 70-900.

As the Appellate Division observed in Firemen's, numerous cases from around the country similarly have held that damage to the insured's work product standing alone is not an occurrence. In surveying the law, one leading insurance treatise observed:

> The majority of jurisdictions have held that breach of contract is not an occurrence .... [A] claim for faulty workmanship, in and of itself, is not an occurrence under a commercial general liability policy because a failure of workmanship does not involve the fortuity required to constitute an accident.

Lee R. Russ & Thomas F. Segalla, Couch on Insurance, §129:4 (3d ed. 1998).

The highest courts of many states agree with this interpretation of a standard CGL policy. For example, in L-J, Inc. v. Bituminous Fire & Marine Ins. Co., 621 S.E.2d 33 (S.C. 2005), a case relied upon by the Appellate Division in Firemen's, a general contractor subcontracted for site preparation. The general contractor was sued when the subcontractor's inadequate clearing of tree stumps caused the road surface to deteriorate and fail. The appellate court held that the damage to the pavement was accidental damage. The Supreme Court of South Carolina reversed, holding that a general contractor could not shift to a CGL insurer the risk of economic loss associated with defective work, as faulty workmanship does not constitute an "occurrence." The court noted the majority of jurisdictions holding that "faulty workmanship standing alone, resulting in damage only to the work itself, does not constitute an occurrence." 621 S.E.2d at 36. Applying that logic, the court reasoned:

> We find these negligent acts constitute faulty workmanship, which damaged the roadway system only. And because faulty workmanship is not something that is typically caused by an accident or by exposure to the same general harmful conditions, we hold that the damage in this case did not constitute an occurrence.

<u>Id.</u>

In <u>Kvaerner Metals v. Commercial Union Ins. Co.</u>, 908 A.2d 888 (Pa. 2006), a steel company sued a contractor for breach of contract and breach of warranty for allegedly failing to properly design and construct a coke oven battery. The Pennsylvania Supreme Court, citing to <u>L-J</u>, held that the definition of "accident" required to establish an "occurrence" cannot be satisfied based upon claims of faulty workmanship. According to the court:

> Such claims simply do not present the degree of fortuity contemplated by the ordinary definition of 'accident' or its common judicial construction in this context. To hold otherwise would be to convert a policy for insurance into a performance bond. We are unwilling to do so, especially since such protections are already readily available for the protection of contractors

<u>Id.</u> at 899.

In <u>Oak Crest Constr. Co. v. Austin Mut. Ins. Co.</u>, 998 P.2d 1254 (Ore. 2000), the general contractor sued its insurer when it failed to reimburse it for the cost of removing and replacing a subcontractor's painting work. The insurance policy in <u>Oak Crest</u> defined "occurrence" to mean "an accident that includes repeated exposure to similar conditions." The court found that damages arose solely from a breach of contract since there was no other damage, concluding that the problem "in this case was not 'caused by accident' within the meaning of the plaintiffs commercial liability policy." <u>Id.</u> at 1258.

In <u>U.S. Fidelity & Guar. Co. v. Warwick Dev. Co., Inc.</u>, 446 So. 2d 1021 (Ala. 1984), a buyer contracted to buy a home from a builder. The buyer found defects throughout the structure and filed suit against the builder, alleging unworkmanlike construction. The builder tendered the suit for defense to two CGL carriers, who denied coverage. The USF&G policy, like the Policies here, defined "occurrence" as "an

11

accident, including continuous or repeated exposure to conditions ...." Id. The Alabama Supreme Court considered whether the USF&G policy provided coverage for faulty workmanship and noncomplying materials. The court reasoned, "[a]fter a review of the record and policy involved, we conclude that the trial court incorrectly held that USF&G was bound under its policy of insurance to [the builder]." Id. at 1024.

In Webster County Solid Waste Auth. v. Brackenrich & Assocs., Inc., 617 S.E.2d 851, 856 (W.Va. 2005), the insured was sued pursuant to a contract for faulty workmanship in the design, engineering, and inspection of a landfill. That contract obligated the contractor to inspect and supervise the construction. The Webster court cited its prior decision in Corder v. William W. Smith Excavating Co., 556 S.E.2d 77, 82 (W. Va. 2001), and explained:

> The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what a CGL policy was designed to protect against. Rather, a CGL policy is designed to protect policyholders for tort liability for physical damage to others -- not for the business risk of contractual liability of the insured for economic loss because the insured's completed work is not that for which the damaged person bargained.

The court correctly concluded that the policy's completed-operations provision could not be evoked unless there was an "occurrence," and since faulty workmanship was not within the scope of a traditional CGL policy, coverage did not exist under the policy.

In addition to state supreme courts, several Federal circuit courts have also endorsed this approach. For example, in Burlington Ins. Co. v. Oceanic Design &

Constr., Inc., 383 F.3d 940 (9th Cir. 2004), the court considered the question under Hawaii law whether a company which contracted to build a house is covered under its CGL policy for claims brought against it by dissatisfied homeowners. The homeowners alleged that the builder improperly designed and/or constructed the foundation of the residence, causing earth movement and resulting physical and structural damage to the residence. The builder, relying on allegations of "negligent breach of contract", tendered the suit to its insurer. Id. at 945. In addition to finding that coverage was precluded by Hawaii's public policy, the court noted that contract and contract-based tort claims are not within the scope of CGL policies under Hawaii law, since there is no occurrence that triggers an insurer's duty to defend.

In ACS Constr. Co., Inc. of Mississippi v. GCU, 332 F.3d 885 (5th Cir. 2003), the builder contracted with the U.S. Army Corps of Engineers to construct munitions bunkers. The contractor entered into a subcontract to install waterproofing membrane, which later leaked. In that subcontract, the subcontractor accepted all responsibility for the work. The court recognized the core of the dispute was whether the installation of the faulty waterproofing membrane which resulted in "the consequential leaks constitute[d] an occurrence." Id. at 888. The court found that the leaks resulting from the breach of contract were not accidental and therefore not an occurrence. In addition, the court rejected the insured's contention that the subcontractor exception and Exclusion l. (for damage to the insured's work) created coverage, as this interpretation would transform a CGL policy into a performance bond.

Accordingly, the law around the country, like in New Jersey, is well reasoned that the natural result of poor workmanship does not constitute an "occurrence." See, e.g.,

Nabholz Constr. Corp. v. St. Paul Fire & Marine Ins. Co., 354 F. Supp. 2d 917, 922 (E.D. Ark. 2005) ("This court predicts that the Arkansas Supreme Court would elect to join the majority of courts in jurisdictions throughout the country which have concluded that defective workmanship does not constitute an occurrence on policies such as the one here"); Brosnahan Builders, Inc. v. Harleysville Mut. Ins. Co., 137 F. Supp. 2d 517, 526 (D. Del. 2001) (claims for faulty construction which were clearly within the control of the general contractor were not a fortuitous circumstance, and therefore the damage to the home was not caused by an occurrence); Custom Planning & Dev. v. American Nat'l Fire Ins. Co., 606 S.E.2d 39, 41 (Ga. App. 2004) (where there is no property damage other than to the work itself as "a consequence of faulty workmanship, then there has been no occurrence"); Amerisure, Inc. v. Wurster Const. Co., Inc., 818 N.E.2d 998, 1005 (Ind. App. 2004) (defective work of a general contractor was not an occurrence, declining to follow Minnesota law regarding the effect of the 1986 modifications to the "your work" exclusion since those revisions did not alter the fundamental purpose of a CGL policy); Baker Residential Ltd. Partnership v. Travelers Ins. Co., 10 A.D.3d 586, 587 (N.Y. App. 1st Dep. 2004) (improper installation of structural beams that have deteriorated from water penetration is "a classic faulty workmanship/construction contract dispute" and "the damages sought therein did not arise from an occurrence ... as contemplated by the policy").

Most recently, in a case factually akin to that presented at bar, the Pennsylvania Superior Court, citing Kvaerner, supra, held that damage caused by water that seeps through faulty home exterior work to damage home interiors is not a fortuitous event satisfying definition of "occurrence." See, Millers Capital Ins. Co. v. Gambone Bros.

Development Co., ___ A.2d ___, 2007 WL 4555258, *7 (Pa. Super. Dec. 28, 2007). In that case, the insured was a real estate developer responsible for the construction of two housing complexes outside of Philadelphia. The underlying plaintiffs were homeowners who complained that water leaks resulted from the insured's construction defects and caused damage to the homes' interiors. In finding that there was no "occurrence," the Superior Court rejected the insured's contention that the underlying lawsuits did not merely involve claims for faulty workmanship that led to the failure of stucco exteriors but also involve claims for ancillary and accidental damage caused by the resulting water leaks to non-defective work inside the home interiors. Id. at *5.

In the instant matter, the plaintiff's claims for breach of contract and negligence and for breach of implied warranties are premised upon the alleged faulty construction by or on behalf of the insured developer. Specifically, In Count One, the plaintiff alleged that the developer defendants assumed a contractual and common law duty to design, construct and convey to the public residential dwellings that conformed to existing standards applicable to the construction industry, conformed to the construction plans that were made for the project, were free from defects in design and in construction, conformed to the construction plans that were made for the project, and were free from defects in design and in construction. See, Exhibit "A" at Count One, ¶ 3.

According to the Complaint, the developer defendants made representations as to the quality of the condominium units and made written and oral representations to prospective purchasers in order to induce them into purchasing the condominium units. Catalina Cove alleged that the developer defendants expressly and impliedly warranted that the condominium units, as constructed, would be in accordance with certain

15

architectural plans and in accordance with all applicable building codes and existing standards in the industry.    It also alleged that these defendants breached their contractual obligations to the purchasers of the units by failing to design and construct, in an acceptable manner, the various buildings that comprised the condominium development.  See, Exhibit "A" at Count One, ¶¶ 4-6.

According to the Complaint, in designing and constructing the buildings, the developer defendants failed to exercise that degree of care and skill that may reasonably be expected by those entities that operate in the construction industry. Catalina Cove alleged that their actions were negligent and constituted a breach of the contractual and common-law duties imposed upon them.   Further, the plaintiff alleged that the developer defendants were negligent in the design and construction of the condominium buildings, and that those defendants designed, constructed and ultimately sold to the public condominium units that were defective and not constructed in accordance with the applicable standards.   As a result of the alleged breach of contractual duties by the developer defendants, plaintiff sustained damages.   See, Exhibit "A" at Count One, ¶¶ 7-12.

In Count Two, the plaintiff alleged that the developer defendants breached certain implied warranties of merchantability and fitness for use for a particular purpose. See, Exhibit "A" at Count Two, ¶¶ 2-3.

The damages allegedly resulting from the insured's faulty workmanship at issue in the aforementioned claims are damages to the insured's own work, not damage to third-party. See, Exhibit "F" at pp. 45-46. According to Catalina Cove's expert:

**Relationship of Causes to Original Design and Construction**
Conditions of mild to severe damage to wall components, including wall sheathing, insulation, and framing, are the result of defects in the original design and construction of the Catalina Cove development by Parkshore Development, and not of any deficiencies in maintenance or operation of the premises by the Owners.

**As to Causal Relationship with Defects Observed**
Deficiencies in construction methods of roofing, deck framing, and wall finish installation allow the penetration of water into and behind the exterior wall finishes, causing damage to wall sheathing, framing, and insulation, as well as perimeter subfloor and floor framing at some locations.

The assembly of window combination units not in compliance with manufacturer's instructions has allowed the infiltration of water into the enclosed spaces around the subject windows, causing damage to interior finishes as well as to wall framing, sheathing, and insulation.

Thus, by Catalina Cove's own expert's own analysis, the damage caused by the allegedly faulty workmanship was to the work performed and/or the product constructed by on or behalf of Catalina Cove. Accordingly, the claims alleged in Counts One and Two do not constitute an accident, or "occurrence," under the Firemen's case.

As for the failure of remediation (Count Four), that claim is based upon the developer's alleged negligence in failing to diagnose the cause of the water infiltration, remedying the cause of the infiltration, and failing to rectify the structural damage. This relates to alleged faulty workmanship for remediation of damages from the supposed original faulty work. Under the Firemen's case, Count Four likewise does not satisfy the definition of "occurrence." See also, Freestone v. New England Log Homes, Inc., 2003 Pa. Super. 24 (2003)(builder's negligence in advising plaintiffs to correct initial defects not an "occurrence").

17

Because there is no "occurrence" alleged giving rise to the claims asserted in Counts One, Two and Four of Catalina Cove's Complaint, the PNI Policy's Insuring Agreement for property damage coverage has not been triggered. Accordingly, PNI has no duty to defend or indemnify Parkshore for those claims.

### 4. The Alleged Violation of the CFA Did Not Result in "Property Damage"

As for the alleged violation of the New Jersey Consumer Fraud Act ("CFA") (Count Three) asserted in Catalina Cove's Complaint, one who makes affirmative misrepresentations is liable under section of the Act prohibiting any fraud in connection with sale or advertisement of merchandise or real estate, even in absence of knowledge of falsity of misrepresentation, negligence, or intent to deceive. Gennari v. Weichert Co. Realtors, 148 N.J. 582 (1997). For liability to attach under the CFA to a defendant's omission or failure to disclose, the plaintiff must show that the defendant acted knowingly. Id.

The operative acts or omissions underlying a CFA claim are not based on faulty workmanship but, rather, representations and/or omissions made in connection with the sale and advertisement of real estate. Catalina Cove alleges in its complaint that the developer made written and oral representations as to the quality of the units and common elements but failed to provide units and common elements that conformed to the representations. See, Exhibit "A" at Count Three, ¶¶ 2-3. Even assuming that the representations at issue in the Underlying Action constitute an "occurrence," there is no allegation that the representations caused physical damage or loss of use to property, i.e., "property damage." Therefore, because the nexus requirement in the Insuring Agreement is not satisfied, there is no coverage for the CFA claim.

## CONCLUSION

Because the allegations in the Underlying Action of faulty workmanship by or on behalf of Parkshore do not constitute an "occurrence" within the meaning of the Policy, Catalina Cove's claims against Parkshore in Counts One, Two and Four do not satisfy the Coverage A Insuring Agreement and are not covered under the Policy.  Because the alleged representations underlying Catalina Cove's Consumer Fraud Act claim against Parkshore did not cause "property damage," Catalina Cove's claims against Parkshore in Count Three do not satisfy the Coverage A Insuring Agreement and are not covered under the Policy.  On these bases, PNI respectfully requests that this Court grant its Motion for Summary Judgment and order that PNI has no obligation to defend or indemnify Parkshore for the claims asserted in the Underlying Action.

Respectfully submitted,

WEBER GALLAGHER SIMPSON
STAPLETON FIRES & NEWBY LLP

Dated: January 31, 2008            BY. s/ Michael S. Savett
                                   Michael S. Savett, Esquire (MSS6520)
                                   WEBER GALLAGHER SIMPSON
                                   STAPLETON FIRES & NEWBY LLP
                                   1101 N. Kings Highway, Suite 405
                                   Cherry Hill, NJ  08034
                                   (856) 667-9111
                                   (856) 667-9485 FAX

                                   Attorney for Plaintiff, Pennsylvania
                                   National Mutual Casualty Insurance
                                   Company