(Not for Publication) (Docket Entry Nos. 17, 24)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | : <br> : <br> : <br> : |
| Plaintiff, | : <br> : Civil No. 07-1331 (RBK) |
| v. | : <br> : **OPINION** |
| PARKSHORE DEVELOPMENT CORPORATION, et al., | : <br> : <br> : |
| Defendants. | : |

Currently before the Court in this action for a declaratory judgment are Plaintiff Pennsylvania National Mutual Casualty Insurance Company's ("PNI") motion for summary judgment and Defendant Parkshore Development Corporation's ("Parkshore") cross-motion for summary judgment. For the reasons to follow, Defendant Parkshore's motion will be denied and Plaintiff's motion will be granted in part and denied in part.

**I. Facts**

PNI seeks a declaration that it bears no duty to defend or indemnify its policyholder, Defendant Parkshore, in a New Jersey state court action filed by Catalina Cove Condominium Association ("Catalina Cove").

Parkshore was the developer and general contractor for Catalina Cove Condominiums in Linwood, New Jersey. All of the work on the Catalina Cove Condominiums at issue in this case was performed by subcontractors. Construction was completed in 1998. In July 1999, Catalina

Cove informed Parkshore that stucco around some of the windows had not been caulked properly, and the windows were leaking.  Parkshore retained a subcontractor, Keen's Caulking and Waterproofing, to recaulk the stucco.

In or about October 2006, Catalina Cove filed suit against Parkshore, Keen's Caulking and Waterproofing ("Keen's Caulking"), and multiple John Doe defendants.  Catalina Cove advanced claims of breach of contract and negligence, breach of implied warranties, consumer fraud, and failure of remediation.  Catalina Cove's expert identified numerous construction problems in the condominiums that led to wet crawl spaces and water infiltration of the walls.

In Count I of its complaint, Catalina Cove claimed that Parkshore and the John Doe developers ("Developer Defendants") breached their common law and contractual duties to design, construct, and convey to the public residential dwellings that conformed to construction industry standards and plans for the project, and that were free from design and construction defects.  In Count II, Catalina Cove alleged that the Developer Defendants breached the implied warranties of merchantability and fitness for a particular purpose.  In Count III, Catalina Cove claimed that the Developer Defendants violated the New Jersey Consumer Fraud Act by making false representations to prospective purchasers of condominium units about the quality of the units.  In Count IV, Catalina Cove alleged that the Developer Defendants and Keen's Caulking, when notified of the construction problems, failed to properly diagnose the source of the problems and take steps to correct the problems.

PNI is Parkshore's insurer. PNI issued Parkshore a Commercial General Liability policy for each consecutive year from March 7, 1989 through March 7, 2007.  The PNI policies issued to Parkshore cover bodily injury and property damage caused by an "occurrence."

The PNI policies contain two slightly different definitions of "occurrence."[1]  The earlier policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."  Later policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The PNI policies also contain two different definitions of "property damage."  One form defines "property damage" as:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

Another form defines property damage as:

> a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

A number of the PNI policies also contain the following language:

> This insurance does not apply to . . . "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard."
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Parkshore submitted a claim for defense and indemnification in the Catalina Cove action to PNI on or about October 17, 2006.  By letter dated November 27, 2006, PNI disclaimed coverage for the Catalina Cove action, concluding that the action did not meet the policy definitions of "occurrence" and "property damage."  PNI subsequently filed this suit on March

---

[1] Neither party has identified which policy year applies to this case.

22, 2007, seeking a declaration that it had no duty to defend or indemnify Parkshore in the Catalina Cove action.

PNI filed a motion for summary judgment, arguing that (1) the allegations of faulty workmanship by or on behalf of Parkshore contained in the Catalina Cove complaint do not constitute an "occurrence" within the meaning of the PNI policy and (2) the alleged violations of the Consumer Fraud Act in the Catalina Cove complaint did not cause "property damage" within the meaning of the PNI policy.  Parkshore opposed PNI's motion, arguing that Catalina Cove's claims against it meet the policy definitions of "occurrence" and "property damage."  Parkshore also filed a cross-motion for summary judgment, arguing that PNI has a duty to indemnify and defend Parkshore because the Catalina Cove complaint states a claim constituting a risk covered by the insurance policy.

## II. Analysis

### A. Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Celotex, 477 U.S. at 330.  The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving

party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**B. Principles Guiding the Interpretation of Insurance Policies**

Because the parties agree that New Jersey law governs in this case, the Court will apply New Jersey law. See Newport Assocs. Dev. Co. V. Travelers Indem. Co. of Illinois, 162 F.3d 789, 791 (3d Cir. 1998). Under New Jersey law, the terms of an insurance contract are to be given "their everyday and common meaning." Newport Assocs. Dev. Co. v. Travelers Indem. Co. of Illinois, 162 F.3d 789, 792 (3d Cir.1998). Any ambiguities in policy language "will be resolved in favor of the insured." Am. Motorists Ins. Co. v. L-C-A Sales Co., 713 A.2d 1007, 1013 (N.J. 1998).

Whether an insurer bears a duty to defend its policyholder against a complaint depends upon whether the insurer would be obligated to indemnify the policyholder in the event that the third party plaintiff successfully proved his claim. Merrimack Mut. Fire Ins. Co. v. Coppola, 690 A.2d 1059, 1064 (N.J. Super. Ct. App. Div. 1997). An insurer's duty to defend its policyholder is broader than the duty to indemnify in that the insurer must defend its policyholder against potentially covered claims even if the claims are groundless, false, or fraudulent. Hebela v.

Healthcare Ins. Co., 851 A.2d 75, 79 (N.J. Super. Ct. App. Div. 2004).  The relevant inquiry for determining if the duty to defend has been triggered is a comparison of the allegations in the underlying complaint against the language of the insurance policy.  SL Indus., Inc. v. Am. Motorists Ins. Co., 607 A.2d 1266, 1271 (N.J. 1992).  "When the two correspond, the insurer must defend" its policyholder against the underlying suit.  Id.

      D. **Analysis of the PNI policies**

The PNI policies cover property damage caused by occurrences.  The parties disagree as to (1) whether the Catalina Cove claims for breach of contract and negligence (Count I), breach of implied warranties (Count II), and failure of remediation (Count IV) involve an "occurrence" and (2) whether the actions giving rise to Catalina Cove's Consumer Fraud Act Claim (Count III) caused any "property damage."

              1.  **Counts I, II, and IV of the Catalina Cove Complaint:  Occurrence**

PNI argues that Catalina Cove's claims for breach of contract, negligence, breach of implied warranties, and failure of remediation all spring from faulty workmanship done by or on behalf of Parkshore, and that faulty workmanship by the insured is not an "occurrence." Parkshore responds that there was an "occurrence" because Parkshore did not expect that work performed by subcontractors would damage other parts of the condominium complex.  Parkshore also argues that the fact that there is an exception for subcontractor work in the exclusion for property damage caused by "your work" shows that the policy covers damages Parkshore did not expect that were caused by subcontractors' work.

Whether faulty workmanship is an "occurrence" under a commercial general liability (CGL) policy is an issue of first impression for this Court, but the majority of courts that have addressed the issue, including the Appellate Division of the Superior Court of New Jersey, have

found that it is not.  See Firemen's Ins. Co. of Newark v. Nat'l Union Fire Ins. Co., 904 A.2d 754, 762 (N.J. Super. Ct. App. Div. 2006); see also 9A COUCH ON INSURANCE § 129:4 (3d ed. 2008) ("[A] claim for faulty workmanship, in and of itself, is not an occurrence under a commercial general liability policy because a failure of workmanship does not involve the fortuity required to constitute an accident.").  In Firemen's, the court held that faulty workmanship, by itself, whether performed by a subcontractor or general contractor, is not an "occurrence" under a commercial general liability policy.  See 904 A.2d at 762-63 (finding no occurrence where only damage sought was replacement of defective work)[2].

By contrast, the Appellate Division of the New Jersey Superior Court has held that when faulty workmanship causes damage to property other than the work done by the insured, there is an occurrence.  See S.N. Golden Estates, Inc. v. Continental Casualty Co., 680 A.2d 1114, (N.J. Super. Ct. App. Div. 1996) (finding "occurrence" where insured's allegedly faulty construction of septic systems caused damage to lawns and homes);[3] see also 9A COUCH ON INSURANCE § 129:4 ("[A]lthough a commercial general liability policy does not provide coverage for faulty workmanship that damages only the resulting work product, the policy does provide coverage if the faulty workmanship causes bodily injury or property damage to something other than the insured's work product.").

---

[2] The policy in Firemen's defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."  Id. at 757.  This is the same language used in the earlier PNI policies.

[3] The policy in S.N. Golden defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."  Id. at 1117.

In this case, the damage was limited to Parkshore's work product, the Catalina Cove condominiums. Therefore, the Court finds that there was no occurrence triggering coverage under the PNI policy.

Parkshore cites several cases where courts in other jurisdictions held that whether there was an "occurrence" does not depend on what property is damaged.  See Lamar Homes, Inc. v. Mid Continent Cas. Co, 242 S.W.3d 1, 9 (Tex. 2007) (stating "no logical basis within the 'occurrence' definition allows for distinguishing between damage to the insured's work and damage to some third party's property"); U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So.2d 871, 883 (Fla. 2007) ("[W]e fail to see how defective work that results in a claim against the contractor because of injury to a third party or damage to a third party's property is 'unforeseeable,' while the same defective work that results in a claim against the contractor because of damage to the completed project is 'foreseeable.'").  However, this seems to be the very distinction that New Jersey courts have made in Firemen's and S.N. Golden Estates.

Parkshore argues that while faulty work generally is not covered by the PNI policy, it is because of the business risk exclusion for damage caused by "your work," not because of the definition of "occurrence."  Parkshore notes that this exclusion specifically excepts damages caused by subcontractors' work.  In Weedo v. Stone-E-Brick, Inc., the New Jersey Supreme Court relied on the business risk exclusion to find that faulty work is not covered by a CGL policy.  See 405 A.2d 788, 791-93 (N.J. 1979). Because Weedo does not address the definition of "occurrence" under a CGL policy, this Court is hesitant to find that Weedo suggests that faulty workmanship is necessarily an occurrence.  Given the existing case law in New Jersey, this Court finds that there is no "occurrence" where faulty work leads to damage to work product of the insured.  Therefore, PNI's motion for summary judgment is granted as to PNI's duty to

defend and indemnify Parkshore as to Counts I, II, and IV of the Catalina Cove complaint, and Parkshore's motion for summary judgment is denied as to these claims.

### 2. Consumer Fraud Act Claim and Property Damage

PNI contends that it has no obligation to defend or indemnify Parkshore for the Consumer Fraud Act (CFA) claim (Count III) brought by Catalina Cove because no property damage is alleged to have resulted from this claim. Parskhore responds that the damages Catalina Cove alleged it suffered from the CFA violation were no different than the damages alleged in the other counts of its complaint, which do constitute "property damage."

Count III of Catalina Cove's complaint alleges that Parkshore made representations as to the quality of the condominium units and then failed to provide units which conformed to these representations. The complaint states that Catalina Cove "sustained damages" as a result of Parkshore's alleged violation of the CFA. Because it is unclear what damages Catalina Cove claims to have suffered as a result of Parkshore's alleged violation of the CFA, summary judgment as to PNI's duty to defend and indemnify Parkshore for the CFA claim is not appropriate at this time. Therefore, both motions for summary judgment are denied as to PNI's duty to indemnify and defend Parkshore with regard to Count III of the Catalina Cove complaint.

## III. Conclusion

For the reasons expressed above, Plaintiff PNI's motion for summary judgment is granted as to its duty to defend and indemnify Parkshore for Counts I, II, and IV of Catalina Cove's complaint and denied as to its duty to defend and indemnify Parkshore for Count III of Catalina Cove's Complaint. Defendant Parkshore's motion for summary judgment is denied.

Dated:   9-10-08                                               /s/ Robert B. Kugler
                                                                      ROBERT B. KUGLER
                                                                      United States District Judge