(Not for Publication) (Docket Entry No. 31)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                   :
PENNSYLVANIA NATIONAL              :
MUTUAL CASUALTY INSURANCE          :
COMPANY,                           :
                                   :
            Plaintiff,             :
                                   :  Civil No. 07-1331 (RBK/JS)
      v.                           :
                                   :  **OPINION**
PARKSHORE DEVELOPMENT              :
CORPORATION, et al.,               :
                                   :
            Defendants.            :
_____:

Presently before the Court is a motion by Defendant Parkshore Development Corporation ("Parkshore") for reconsideration of this Court's Opinion and Order of September 10, 2008 in which the Court denied Parkshore's motion for summary judgment and granted in part the motion for summary judgment filed by Plaintiff Pennsylvania National Mutual Casualty Insurance Company ("PNI"). For the reasons set forth below, Parkshore's motion for reconsideration will be denied.

**I.  BACKGROUND**

Parkshore was the developer and general contractor for the Catalina Cove Condominiums. The last unit was completed in 1998. In 2006, the Catalina Cove Condominium Association ("Catalina Cove") filed suit against Parkshore and other defendants, claiming that Parkshore breached its contract with purchasers of the condominium units by failing to design

1

and construct the condominium buildings in an acceptable manner; was negligent in designing and constructing the condominium buildings; breached implied warranties of merchantability and fitness for a particular purpose; and violated the New Jersey Consumer Fraud Act. Catalina Cove further claimed that Parkshore and the other defendants were negligent in failing to properly diagnose the cause of and failing to remedy water infiltration, failing to repair structural damage caused by water infiltration, and failing to prevent further water infiltration. According to Catalina Cove, this negligence caused common elements of the Catalina Cove condominiums to sustain substantial damage.

Parkshore submitted a claim for defense and indemnification in the Catalina Cove action to PNI, from whom Parkshore had obtained a Comprehensive General Liability ("CGL") insurance policy. PNI disclaimed coverage for the Catalina Cove action, finding that the policy requirements of an "occurrence" and "property damage" had not been met. PNI subsequently filed this action seeking a declaratory judgment that it has no duty to defend or indemnify Parkshore in connection with the Catalina Cove suit.

Both Parkshore and PNI filed motions for summary judgment. PNI argued that coverage under its policy had not been triggered because there was no "occurrence" within the meaning of the policy. According to PNI, Catalina Cove's claims were based on faulty workmanship, which is not an occurrence. According to Parkshore, there was an occurrence because Catalina Cove's claims were for consequential damages that arose after construction had been completed and that were unanticipated by Parkshore. In its September 10, 2008 Opinion and Order, this Court found that there had been no occurrence, and granted in part PNI's motion for summary judgment and denied Parkshore's motion for summary judgment. Parkshore now seeks reconsideration of that

2

Opinion and Order, arguing that this Court failed to address the distinction between a construction defect present at the time of closing and consequential damages sustained later as a result of the construction defect, and that this failure constituted a "manifest error of law."

## II. STANDARD

In the District of New Jersey, Local Civil Rule 7.1(i) governs motions for reconsideration. Church & Dwight Co. v. Abbott Labs., 545 F. Supp. 2d 447, 449 (D.N.J. 2008). This rule "permits a party to seek reconsideration by the Court of matters 'which [it] believes the Court has overlooked' when it ruled on a motion." NL Indus., Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 515 (D.N.J. 1996) (quoting local rule); see also United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999) (noting that party seeking reconsideration must show "that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision"). "The standard of review involved in a motion for [reconsideration] is quite high, and therefore relief under this rule is granted very sparingly." United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994) (citing Maldonado v. Lucca, 636 F. Supp. 621, 630 (D.N.J. 1986)). In order to prevail, the party moving for reconsideration must "show[] at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

Rule 7.1(i) does not allow parties to restate arguments which the court has already considered. See G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990). "A motion that merely

raises a disagreement with the Court's initial decision is not an appropriate reconsideration motion, but should be dealt with in the normal appellate process." Church & Dwight Co., 545 F. Supp. 2d at 450 (citing Bowers v. Nat'l Collegiate Athletic Ass'n, 130 F. Supp. 2d 610, 612 (D.N.J. 2001)).

### III.  DISCUSSION

In its September 10, 2008 Opinion, this Court found that there was no occurrence because the only damage was to the condominiums built by Parkshore. The Court noted that the New Jersey Supreme Court has not ruled on when, if ever, faulty workmanship could constitute an occurrence. This Court further noted, however, that the Appellate Division of the Superior Court of New Jersey has held that faulty workmanship that damages only the work product of the insured is not an occurrence. See Firemen's Ins. Co. of Newark v. Nat'l Union Fire Ins. Co., 904 A.2d 754, 762-63 (N.J. Super. Ct. App. Div. 2006) (finding no occurrence where only damage was to general contractor's work product).

**A. The Significance of Weedo v. Stone-E-Brick, Inc.**

Parkshore suggests that this Court overlooked the significance of the New Jersey Supreme Court's decision in Weedo v. Stone-E-Brick, Inc., 405 A.2d 788 (N.J. 1979). According to Parkshore, the Weedo court drew a distinction between the risk of having to repair a defect and the risk that the defect could cause consequential damages.

First, this Court stands by its prior conclusion that the decision in Weedo was based on an interpretation of exclusions in the policy, not on the definition of occurrence. See Weedo, 405 A.2d at 792 (finding that two exclusions were applicable). Second, to the extent that Weedo could be interpreted to address the definition of occurrence, the distinction drawn by the Weedo

court was between the risk that faulty goods will need to be repaired or replaced and "the risk . . . that the goods, products or work of the insured, once relinquished and completed, will cause bodily injury or damage to property **other than to the product or completed work itself**, and for which the insured may be found liable." Id. at 791 (emphasis added) (quoting Henderson, Insurance Protection for Products Liability and Completed Operations: What Every Lawyer Should Know, 50 Neb. L. Rev. 415, 441 (1971)).  Thus, the Court finds that there was no "manifest error" in its interpretation of Weedo.

    **B.  Cases from other Jurisdictions**

Parkshore further argues that a number of state courts have found that there can be an occurrence when faulty construction damages only the insured's own work.  See, e.g., Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 9 (Tex. 2007) (finding occurrence where homebuilder was negligent and did not intend or expect its work to damage home it built); U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So.2d 871, 885 (Fla. 2007) ("[W]e reject a definition of 'occurrence' that renders damage to the insured's own work as a result of a subcontractor's faulty workmanship expected, but renders damage to property of a third party caused by the same faulty workmanship unexpected."); Travelers Indem. Co. v. Moore & Assocs., Inc., 216 S.W.3d 302, 308-09 (Tenn. 2007) (finding water damage was not foreseeable to construction company where subcontractor installed faulty windows); Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co., 137 P.3d 486, 495 (Kan. 2006) (finding occurrence where faulty materials and workmanship by subcontractor caused home to be exposed to moisture, which resulted in water damage); American Family Mut. Ins. v. American Girl, 673 N.W.2d 65, 69, 78 (Wis. 2004) (finding occurrence where "soil engineering subcontractor gave faulty site-preparation advice to a general

contractor in connection with the construction of a warehouse" and soil conditions later caused foundation to sink and building to crack).

This Court did not overlook the existence of a line of cases finding that faulty construction causing damage only to the insured's work could be an occurrence. The Court explicitly acknowledged the existence of such cases, but found them to be inconsistent with the law in New Jersey.

Further, Parkshore, in its motion for reconsideration, does not mention that there is another line of cases that support this Court's prior decision. See Millers Capital Ins. Co. v. Gambone Bros. Dev. Co., 941 A.2d 706, 713-14 (Pa. Super. Ct. 2007) (finding no accident, and thus no occurrence, where construction defects caused leaks which damaged non-faulty portions of builder's work); Burlington Ins. Co. v. Oceanic Design & Const., Inc., 383 F.3d 940, 943, 948-49 (9th Cir. 2004) (predicting that Hawaii Supreme Court would not find occurrence where homebuilder's faulty design or construction of foundation caused damage to house and retaining walls); Transp. Ins. Co. v. AARK Constr. Group, Ltd., 526 F. Supp. 2d 350, 356-57 (E.D.N.Y. 2007) (finding no occurrence where only damages sought for faulty construction of garage were "the costs of repair of the garage and loss of use of the building incident to the closure of the garage"); Calvert Ins. Co. v. Herbert Roofing and Insulation Co., 807 F. Supp. 435, 438 (E.D. Mich. 1992) ("[W]hen an insured's defective workmanship results in damage to the property of others, an 'accident' exists within the meaning of the standard comprehensive liability policy."); Stoneridge Dev. Co. v. Essex Ins. Co., 888 N.E.2d 633, 654 (Ill. App. Ct. 2008) (finding no occurrence where improper soil compaction caused damage to home).

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that Parkshore has failed to demonstrate that the Court overlooked dispositive facts or controlling law in reaching its prior decision.  Thus, Parkshore's motion for reconsideration is denied.  An accompanying order shall issue today.


Dated:   6-17-09   　　　　　　　　　　　　　　　 /s/ Robert B. Kugler
　　　　　　　　　　　　　　　　　　　　　　　　　ROBERT B. KUGLER
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge